**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 14 2014, 10:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEREMY M. NOEL**
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CODY WALDRIP, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 53A05-1404-CR-154 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Kenneth G. Todd, Judge
Cause No. 53C03-1301-FA-75

**November 14, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Cody Waldrip challenges the sufficiency of evidence to support his conviction for class B felony escape. We affirm.

## Facts and Procedural History

The facts most favorable to the verdict show that on January 17, 2013, Monroe County Sheriff's Department Deputy Terry Mullis was assigned the task of personally serving a protective order on "Cody Waldrip" at his Bloomington address. When Deputy Mullis reached Waldrip's residence, he knocked and asked for "Cody Waldrip." A man later identified as Waldrip said that he was not there. When the deputy asked to see his identification, he responded that he did not have it. When asked his name, Waldrip replied, "Stevens." The deputy inquired further concerning the address on the order and how long "Stevens" had lived at his current address. When "Stevens" said that he had lived at that address for two months, the deputy asked if he knew why the order, drafted only two days before, would not list a current address for "Cody Waldrip."

In an attempt to clear up the discrepancy, Deputy Mullis prepared to run a license plate check on two vehicles sitting outside. When he asked "Stevens" about the vehicles, "Stevens" said that his mother owned them and that her last name was "Waldrip." "Stevens" then admitted that his last name was actually "Waldrip," but he said that he was Cody's brother and that he would forward the papers to Cody. Deputy Mullis twice asked for his first name, and he twice replied "Mister." At that point, the deputy informed him that he was under arrest, that he would be taking him to the police station, and that he must go inside and

2

get his identification.

Once inside, Waldrip refused Deputy Mullis's instructions to retrieve his identification as well as his repeated orders to put his hands behind his back. Instead, Waldrip began pacing and jumping. The deputy attempted to pepper-spray Waldrip, who then punched the deputy, tackled him, and sat on his chest. Deputy Mullis said that he could not breathe and asked him to stop, but Waldrip refused and then punched him again. Waldrip then offered to release Deputy Mullis if the deputy would just forget about the altercation. The deputy sprayed him with pepper spray, and Waldrip struck him in the face, causing him to lose consciousness momentarily.

Shortly thereafter, Deputy Mullis regained consciousness and found Waldrip still present in the room, apologizing for the altercation. The deputy made his way to his squad car, where he radioed a request for an ambulance and backup. Meanwhile, Waldrip fled the residence and drove away. He was pursued by backup officers and eventually exited his vehicle and began running. Officer Bret Rorem pursued him on foot and attempted to strike him with his baton. Waldrip tackled the officer, struck him in the face, and unsuccessfully attempted to take his service weapon. The officer fired at Waldrip and missed. Waldrip ran away and then paused long enough to swing a long piece of wood at the pursuing officers. He was eventually apprehended.

On January 24, 2013, the State charged Waldrip with class A felony attempted murder, class B felony aggravated battery, class B felony escape, class B felony criminal confinement, class C felony criminal confinement, class C felony disarming a law

3

enforcement officer, three counts of class C felony intimidation, five counts of class D felony resisting law enforcement, and one count of class A misdemeanor resisting law enforcement.

A four-day jury trial ensued, during which the trial court granted Waldrip's motion for judgment of acquittal on the aggravated battery count. The jury convicted Waldrip of class B felony escape and two counts of class D felony resisting law enforcement. The jury deadlocked on the three intimidation counts and acquitted him of the remaining nine counts. Waldrip now appeals his conviction for escape.

**Discussion and Decision**

Waldrip challenges the sufficiency of the evidence to support his conviction for class B felony escape. When reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id*.

To convict Waldrip of class B felony escape, the State was required to prove beyond a reasonable doubt that he "intentionally fle[d] lawful detention … a Class B felony if, while committing it, [he] inflict[ed] bodily injury on another person." Ind. Code § 35-44.1-3-4(a) (2012).[1] Indiana Code Section 35-31.5-2-186(a) lists circumstances that constitute "lawful

---

[1] Because Waldrip limits his argument to the issue of whether his arrest/detention was lawful, we will focus our discussion accordingly. Notwithstanding, we note that Waldrip's acts of punching the deputy in the face and climbing on his chest are sufficient to support a finding of bodily injury. *See* Ind. Code § 35-31.5-2-29 (defining bodily injury as "any impairment of physical condition, including physical pain."). Likewise, we note that Waldrip does not dispute that he fled the scene.

4

detention"; these include an "arrest" or "any other detention for law enforcement purposes." Indiana Code Section 35-33-1-5 defines arrest as "the taking of a person into custody, that he may be held to answer for a crime." Our courts have stated, "an arrest has occurred when a police officer interrupts the freedom of the accused and restricts his or her liberty of movement." *Mesarosh v. State*, 801 N.E.2d 200, 202 (Ind. Ct. App. 2004) (citing *Peterson v. State*, 250 Ind. 272, 234 N.E.2d 488, 490 (1968) and *Gibson v. State*, 733 N.E.2d 945, 953 (Ind. Ct. App. 2000)). Where the suspect has not been handcuffed or otherwise physically restrained, we must look to other indicia to determine whether he was "lawfully detained" at the time he fled. *Mesarosh*, 801 N.E.2d at 202.

Waldrip characterizes his arrest as unlawful based on an alleged lack of probable cause. Probable cause exists where the facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed. *State v. Gilbert*, 997 N.E.2d 414, 417 (Ind. Ct. App. 2013). Because the standard for probable cause is objective, the officer's subjective belief has no legal effect. *Moffitt v. State*, 817 N.E.2d 239, 246 (Ind. Ct. App. 2004), *trans. denied*.

Waldrip submits that it is irrelevant whether the officer believes he has probable cause; he actually must have probable cause. Indiana Code Section 35-33-1-1(a)(4) states, "A law enforcement officer may arrest a person when the officer has … probable cause to believe the person is committing or attempting to commit a misdemeanor in the officer's presence."

5

At trial, Deputy Mullis testified that he attempted to place Waldrip under arrest for false informing, which in pertinent part, requires probable cause that the suspect has given "false information in the official investigation of the commission *of a crime*, knowing the report or information to be false." Ind. Code § 35-44.1-2-3(d)(1) (emphasis added). Admittedly, however, the deputy was not engaged in the official investigation of the commission of a crime; rather, he was attempting to serve a protective order. In the process, Waldrip made false and inconsistent statements concerning his own identity in violation of Indiana Code Section 35-44.1-2-4, which states,

(a) A person who:

> (1) with intent to mislead public servants;

> (2) in a five (5) year period; and

> (3) in one (1) or more official proceedings or investigations;

has knowingly made at least two (2) material statements concerning the person's identity that are inconsistent to the degree that one (1) of them is necessarily false commits false identity statement, a Class A misdemeanor.

As an officer with the Monroe County Sheriff's Department, Deputy Mullis was a public servant. *See* Ind. Code § 35-31.5-2-261 (defining public servant as a person "authorized to perform an official function on behalf of, and … paid by, a governmental entity"). At the time of the offense, the deputy was assigned the task of personally serving a protective order on "Cody Waldrip" at the address specified in the order. What began as a seemingly innocuous task turned into a mystery requiring additional investigation into Waldrip's identity, all resulting from Waldrip's contradictory statements.

6

When Deputy Mullis first arrived at the residence, Waldrip falsely identified himself as "Stevens" and told him that "Cody Waldrip" was not there. Because the deputy was tasked with ensuring that the protective order was tendered only to "Cody Waldrip," he inquired further concerning the accuracy of the address contained in the order and the ownership of the vehicles parked outside the residence. When he prepared to run a license plate check on the vehicles, Waldrip changed his story. He admitted that his last name was "Waldrip" but said that he was Cody's brother and that his first name was "Mister." Based on these material, inconsistent statements, Deputy Mullis informed Waldrip that he was under arrest.

We conclude that probable cause existed for Waldrip's arrest. Although Deputy Mullis subjectively misidentified the crime for which there was probable cause as "false informing," an objective reasonable person would have determined that there was probable cause to believe that Waldrip committed the misdemeanor offense of "false identity statement" while in the deputy's presence. Thus, Waldrip was not the subject of an unlawful arrest or detention. Rather, he intentionally fled from lawful detention and inflicted bodily injury. As such, the evidence is sufficient to support his conviction for class B felony escape. Accordingly, we affirm.

Affirmed.

RILEY, J., and MATHIAS, J., concur.

7