**Todd D. ANGLIN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 57A03–0210–CR–370.**

Court of Appeals of Indiana.

May 13, 2003.

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Todd D. Anglin appeals from his conviction for Escape, as a Class C felony.[1] He presents the following three issues for our review which we restate as:

 I. Whether the evidence was .sufficient to support the conviction;

---

1. Ind.Code § 35–44–3–5 (Burns Code Ed. Supp.2002).

II. Whether the trial court, in sentencing, erred in considering aggravating and mitigating circumstances; and

III. Whether the sentence imposed by the trial court was inappropriate.

We affirm.

A review of the record reveals that on August 30, 2001, Anglin was sentenced to serve one year in the Noble County Jail and one year on probation following a guilty plea arising out of his arrest for possession of marijuana, possession of cocaine or a narcotic drug, and maintaining a common nuisance. At the end of the sentencing hearing, the trial court ordered Anglin to wait in the hall for the transport officer from the Sheriff's Department to come and pick him up. Instead of waiting in the hall as ordered, Anglin walked out of the courthouse and was apprehended on September 16, 2001, in DeKalb County. He was subsequently charged with escape and, following his conviction, was ordered to serve six and one-half years incarceration.

I

*Sufficiency of the Evidence*

 When reviewing a claim of insufficient evidence, we neither reweigh evidence nor judge the credibility of witnesses. *Lycan v. State,* 671 N.E.2d 447, 456 (Ind.Ct.App.1996). We consider only the evidence which is favorable to the judgment along with the reasonable inferences to be drawn therefrom to determine whether there was sufficient evidence of probative value to support a conviction. *Id.*

Indiana Code § 35–44–3–5 provides that "[a] person, except as provided in subsec-

tion (b), who intentionally flees from lawful detention commits escape, a Class C felony." [2] "Lawful detention," as defined in Indiana Code § 35–41–1–18(a) (Burns Code Ed. Supp.2002), includes:

"(1) arrest;

(2) custody following surrender in lieu of arrest;

(3) detention in a penal facility;

(4) detention in a facility for custody of persons alleged or found to be delinquent children;

(5) detention under a law authorizing civil commitment in lieu of criminal proceedings or authorizing such detention while criminal proceedings are held in abeyance;

(6) detention for extradition or deportation;

(7) placement in a community corrections program's residential facility;

(8) electronic monitoring;

(9) custody for purposes incident to any of the above including transportation, medical diagnosis or treatment, court appearances, work, or recreation; or

(10) any other detention for law enforcement purposes."

However, the statute also states that except as provided in subsection (a)(7) and (a)(8), lawful detention "does not include supervision of a person on probation or parole or constraint incidental to release with or without bail." *Id.* The State asserted in the charging information that Anglin was subject to lawful detention under subpart (10), in that he was being detained for law enforcement purposes.[3]

Anglin alleges that the State failed to prove that he was subject to a lawful de-

---

**2.** Subsection (b) discusses situations in which an individual violates a home detention order or removes an electronic monitoring device. It is inapplicable in this case.

**3.** It may well have been equally appropriate to charge Anglin pursuant to subpart (9) incident to subpart (3).

tention at the time that he walked out of the courthouse. To support his argument, he notes that the charging information alleged that he was in the custody of the Noble County Sheriff's Department. In addition, he quotes from the trial court's statement which ordered that Anglin begin serving his sentence. The portion of the statement quoted by Anglin reads, " '(t)he bond posted will be released at ... the time that you are incarcerated, which will be momentarily.' " Appellant's Brief at 9 (quoting transcript at 135). Moreover, he claims that a lawful detention cannot take place until a police officer performs a traditional police function. Finally, he claims that filing a charge for contempt, and not escape, would have been the proper recourse for the State in this case.

The State claims that it is not necessary that an individual be in the physical custody of a police officer in order to be lawfully detained. In addition, the State also alleges that the trial court's entire sentencing order effectively placed Anglin in the immediate custody of the Noble County Sheriff's Department.

While several Indiana cases have addressed at what point in time lawful detention begins, none of them have addressed the specific question before this court, i.e., whether a trial court's order that a defendant wait for the police to arrive and transport him so that he may serve his sentence serves as a valid detention. Rather, the cases upon which the parties rely to support their assertions all address lawful detention when the defendant is within the physical presence of a police officer so that there was no question whether the individual was subject to lawful detention according to statute. *See Leshore v. State*, 755 N.E.2d 164 (Ind. 2001) (holding that defendant was lawfully detained when a police officer placed him in handcuffs pursuant to a Writ of Body Attachment); *Triplett v. State*, 669 N.E.2d 993 (Ind.Ct.App.1996) (holding that defendant was subject to lawful detention when he was under the supervision of an Indianapolis Police Department transportation officer after leaving a hospital where he received treatment); *Ellis v. State*, 634 N.E.2d 771 (Ind.Ct.App.1994) (upholding convictions for criminal contempt and escape when defendant fled from the officer who was escorting him to a detention room after being ordered to go with the officer by the trial court); and *Pier v. State*, 446 N.E.2d 985 (Ind.Ct.App.1983) (upholding conviction for escape after defendant had been told he was under arrest and was ordered to sit in a squad car), *trans. denied*. Because we are not faced with such a factual situation here, these cases are of little value to our analysis. Instead, we must focus upon the meaning of the term "any other detention for law enforcement purposes" to determine whether the trial court's order placed Anglin under lawful detention. Consequently, we must interpret the statute defining "lawful detention."

■ The interpretation of a statute is a question of law which is reserved for the courts. *Grabarczyk v. State*, 772 N.E.2d 428, 430 (Ind.Ct.App.2002). When construing a statute, our foremost objective is to ascertain and give effect to the intent of the legislature. *Melrose v. Capitol City Motor Lodge, Inc.*, 705 N.E.2d 985, 989 (Ind.1998). We examine the statute as a whole and give common and ordinary meaning to the words employed. *Robinson v. Wroblewski*, 704 N.E.2d 467, 474 (Ind.1998). We presume that the legislature intended the language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Citizens Action Coalition of Indiana, Inc. v. Indiana Statewide Ass'n of Rural Elec. Coops., Inc.*, 693 N.E.2d 1324, 1327 (Ind. Ct.App.1998).

■ Turning to the exact phrase upon which the State relied in charging Anglin, we must determine what the General Assembly meant through the use of the words "any other detention for law enforcement purposes." Anglin cites to various authorities which reference the term "law enforcement purposes." *See e.g., State v. Gerschoffer*, 763 N.E.2d 960 (Ind. 2002) (considering whether roadblock was sufficiently related to law enforcement purpose of combating drunk driving); *Hart v. State*, 671 N.E.2d 420 (Ind.Ct.App. 1996) (discussing detainment for the law enforcement purpose of requiring an individual to submit to urine analysis to determine whether he had been driving under the influence of a controlled substance). As Anglin correctly asserts, these cases address situations in which a law enforcement officer[4] was performing an action which the State asserted was done for law enforcement purposes. Anglin is also correct in noting that a member of the judiciary is not considered a law enforcement officer according to applicable statutory law. *See* I.C. § 35–41–1–17. Nonetheless, Anglin's entire argument presupposes that the detention must be performed by a law enforcement officer to be considered for law enforcement purposes. It is this supposition which is not supported by the statute.

■ Indiana Code § 35–41–1–18 does not explicitly limit its application to situations in which a law enforcement officer has control of an individual. While that would generally be the accepted view of many of the factors which are considered

as lawful detention, it is not necessarily so. Further, what is critical in determining the meaning of "any other detention for law enforcement purposes" is that an individual is being detained so that he is subject to legitimate law enforcement purposes. In this case, the law enforcement purpose for which Anglin was ordered to wait in the hallway was for transportation to the jail and incarceration to serve the sentence which he had just been ordered to serve. While the initial detention itself was not performed by a law enforcement officer, that is not fatal to the conviction for the crime as charged by the State. The trial court's order indicated that the sentence was to begin immediately, that actual incarceration would take place momentarily, and that Anglin was being turned over to the Sheriff's Department as soon as the hearing was over. Anglin was "detained" by the trial court in that he was not free to leave the building as soon as he was informed that the Sheriff's Department would pick him up at the designated location in the courthouse. That Anglin was not in the physical custody of the transport officer at the time that he fled does not exclude the conclusion that he was in "detention for law enforcement purposes." Based upon this consideration, the evidence was sufficient to support the conviction for escape.[5]

## II

### *Aggravating and Mitigating Circumstances*

■ Sentencing lies within the discretion of the trial court. *Powell v. State*,

---

4. "Law enforcement officer" is defined in Ind.Code § 35–41–1–17 (Burns Code Ed. Supp.2002).

5. Anglin's claim that he could not be charged with escape because the State could have charged him with contempt is unpersuasive. The case law does support his notion that he could have been charged and convicted of

contempt. *Brumbaugh v. State*, 491 N.E.2d 983 (Ind.1986); *Ellis v. State*, 634 N.E.2d 771 (Ind.Ct.App.1994); *Andrews v. State*, 505 N.E.2d 815 (Ind.Ct.App.1987). However, these cases do not preclude the consideration of his actions as violating the statute defining the crime of escape, nor do they require that he be charged with contempt.

751 N.E.2d 311, 314 (Ind.Ct.App.2001). Sentencing decisions are reviewed only for an abuse of discretion. *Id.* A single aggravating circumstance may be sufficient to enhance a sentence. *Hatchett v. State,* 740 N.E.2d 920, 929 (Ind.Ct.App.2000), *trans. denied.* A sentence enhancement may still be upheld when a trial court improperly applies an aggravator but other valid aggravators exist. *Id.*

The trial court found three aggravating circumstances in this case: (1) Anglin's criminal history, (2) his previous violation of probation, and (3) that he did not turn himself in after fleeing from the courthouse. The trial court did not find any significant mitigating circumstances.

▮▮▮ Anglin asserts that the trial court erred in failing to find that incarceration would result in undue hardship on his family. Specifically, Anglin relies upon the condition of his eight-year-old daughter who Anglin's mother testified has a brain tumor and, as a result, is going blind and deaf.

▮▮▮ A trial court is not obligated to find a circumstance to be mitigating simply because it is offered by a defendant as a mitigating circumstance. *Highbaugh v. State,* 773 N.E.2d 247, 252 (Ind.2002). Additionally, a trial court is not obligated to weigh or credit the mitigating factor the same as the defendant requests. *Id.* Upon appeal, a defendant must show that the proffered mitigating circumstance is both significant and clearly supported by the record. *Id.*

Here, the trial court recognized Anglin's claim that his daughter was sick but did not consider it as a mitigating circumstance. While we do not doubt that Anglin is deeply concerned about his daughter, he has failed to show that a significant undue hardship will be placed upon her because of his incarceration. The record reveals that the child's mother takes care of her and has custody of her. Moreover, even though Anglin mentioned his desire to be with his daughter because of her illness, the record does not reveal his daughter's degree of reliance upon him.[6] Therefore, the trial court did not err in failing to consider the impact of Anglin's incarceration on his daughter as a mitigating circumstance.

In challenging the aggravating circumstances relied upon by the trial court, Anglin concedes that the trial court properly found his criminal history to be an aggravating circumstance. However, he challenges the other two aggravators relied upon by the trial court.

▮▮▮ In challenging the aggravator that he failed to turn himself in, Anglin asserts that the trial court's consideration of this amounts to the use of a material element of the offense as an aggravating circumstance. Anglin is correct in stating that a material element of a crime may not constitute an aggravating circumstance. *See Kile v. State,* 729 N.E.2d 211, 214 (Ind.Ct.App.2000). Nonetheless, the trial court may consider the particularized circumstances of the factual elements of a crime as aggravators. *Id.*

Here, the trial court did consider Anglin's continued flight as an aggravating

---

**6.** In separate letters to the trial court, both Anglin and his mother discussed his feelings for his daughter. Anglin's letter, which is not completely legible because of the quality of the copy which is contained in the appendix, does not indicate what type of interaction occurs between Anglin and his daughter or whether she relied on him for any needs. The letter from Anglin's mother reveals more about the relationship as she stated that Anglin played with his daughter and that he was generally with her when she was in the hospital. However, it does not reveal that Anglin's daughter has needs which will not be filled during his incarceration.

circumstance. Even so, it was not improper for the trial court to consider this as an aggravating factor in this case. Anglin asserted in his description of the events related to his escape contained in the pre-sentence investigation report that he fled because he was stressed over knowing that he was going to be apart from his daughter. He intimated that the only thing he was thinking about was seeing her and that he stayed with a friend in another county for approximately two weeks before learning that police were looking for him. He stated that he was going to turn himself in the following week after spending more time with his daughter, but that he was arrested before he could do so. From the trial court's oral sentencing statement, it is clear that the trial court did not believe that Anglin fled because he wanted to see his daughter again, and that he was only using that as an excuse. Because the trial court was considering Anglin's continued flight under the particularized circumstances of the case and to refute Anglin's claim that he was going to turn himself in, its use was not improper.

Anglin also claims that the use of a prior probation violation as an aggravating circumstance was improper. He asserts that, according to Ind.Code § 35–38–1–7.1 (Burns Code Ed. Supp.2002), the consideration of probation violations is allowed only if they are recent. It appears that the probation violation which the trial court was referring to took place almost four years prior to the escape for which Anglin was being sentenced, but that a little over two years had passed since his probation was actually revoked. However, while Anglin presented the issue that the probation violation must be recent, his argument does not focus upon the amount of time

which passed, but rather, upon the lack of evidence as to when and how the violation occurred and that it did not appear to be linked to the crime of escape. He then asserts that any probation violations should have been considered solely as part of his criminal record. Because two other valid aggravating circumstances exist which would support an enhanced sentence, and no significant mitigating factors were unmistakably present, we decline the invitation to decide what requirements must be met when proving a recent probation violation. Instead, we focus upon whether the sentence Anglin received was inappropriate.

### III

### *Inappropriate Sentence*

Anglin's final argument is that the sentence he received, six and one-half years for a Class C felony, was manifestly unreasonable.[7] He notes that the pre-sentence investigation report and the State recommended that he receive less than the sentence imposed by the trial court. In addition, he compares his sentence to those received by the individuals convicted of contempt for fleeing the courtroom following a directive by a trial court in the prior noted cases of *Brumbaugh, Ellis,* and *Andrews.*

The State, in turn, asserts that the focus should not be upon what punishment others have received for similar conduct, but upon Anglin's character. We agree. As this court stated in *Brown v. State,* 760 N.E.2d 243, 247 (Ind.Ct.App. 2002), *trans. denied,* we should focus less upon comparing the facts of this case to others, whether real or hypothetical, and more upon focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced and what it reveals about his character.[8]

---

7. For a Class C felony, the presumptive sentence is four years and the maximum sentence is eight years. Ind.Code § 35–50–2–6 (Burns Code Ed. Repl.1998).

8. We recognize that this statement was made in *Brown* in the context of review of the imposition of the maximum sentence. How-

The standard which we apply is whether the sentence is inappropriate not whether it is manifestly unreasonable. Ind.App. Rule 7(B).

 A sentence which is authorized by statute will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. *Id.; Kien v. State*, 782 N.E.2d 398, 416 (Ind.Ct.App.2003), *reh'g denied, trans. pending*. When considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive sentence. *Hildebrandt v. State*, 770 N.E.2d 355, 361 (Ind.Ct.App. 2002), *trans. denied.* Trial courts may then consider deviation from the presumptive sentence based upon a balancing of the factors which must be considered pursuant to Ind.Code § 35–38–1–7.1(a) together with any discretionary aggravating and mitigating factors found to exist. *Id.* at 361.

Anglin's criminal record shows several convictions in the relatively short amount of time of four years. In addition, although Anglin claims that he was going to turn himself in, the record reveals that he was residing in a different county and was stopped by police for driving while suspended. Further, at the time of his sentencing, Anglin also was awaiting a jury trial on the charges of resisting law enforcement and possession of marijuana. Contrary to his assertions, this pattern does not show an individual who was changed and would no longer make "mistakes," but someone who has little regard for the law and has not learned from the relative leniency he had been shown previously by several trial courts in sentencing. Based upon his character, Anglin did not receive an inappropriate sentence.

ever, such considerations are appropriate in

The judgment of the trial court is affirmed.

SHARPNACK and KIRSCH, JJ., concur.

all sentence review cases.