**James C. MESAROSH, II,
Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 51A01–0302–CR–56.**

Court of Appeals of Indiana.

Jan. 12, 2004.

---

3. We remind Father and C.B. of their continuing obligation to comply with the trial court's orders.

Susan K. Carpenter, Public Defender of Indiana, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

James C. Mesarosh, II appeals his conviction for escape [1] as a Class C felony, raising a number of issues for review. We need not address most of them, because our resolution of the following issue renders them moot: whether sufficient evidence supports Mesarosh's conviction where, at the time of his flight, the apprehending officer allowed Mesarosh to drive his own car and perform errands prior to being taken into custody.

We reverse and remand with instructions.

1. *See* IC 35–44–3–5.

## FACTS AND PROCEDURAL HISTORY

On May 26, 2002, Deputy Town Marshal Todd Eckert saw Mesarosh walking towards his truck. Because Eckert knew that a court had issued a writ of body attachment for Mesarosh, he initiated a traffic stop shortly after Mesarosh began to drive away. He approached Mesarosh and informed him that he was arresting him. Mesarosh argued, but Eckert insisted. Mesarosh asked Eckert if he could first take his passenger home and move his truck. Eckert agreed, but told Mesarosh that he would be going to jail immediately thereafter. Eckert allowed Mesarosh to drive his truck while he followed a car length behind in his police car.

Mesarosh delivered his passenger, then drove his truck to the parking lot of an apartment complex. He parked the truck, got out, and ran. Eckert ordered him to stop, but Mesarosh continued running. Eckert sought assistance, but none was available, so he gave up the pursuit. Mesarosh was apprehended a few months later and charged with escape as a result of these events. Mesarosh was tried by a jury. After the jury returned a guilty verdict, the trial court entered conviction and sentenced Mesarosh to an enhanced sentence of six years of imprisonment. Mesarosh now appeals.

## DISCUSSION AND DECISION

■ Mesarosh contends that the evidence was insufficient to support his conviction for escape as a Class C felony. Specifically, he argues either that he was not in detention at the time of his flight or that he did not know he was under detention and therefore did not purposefully flee. When reviewing a claim of insufficient evidence, we neither reweigh evi-

dence nor judge the credibility of witnesses. *Anglin v. State*, 787 N.E.2d 1012, 1015 (Ind.Ct.App.2003). We consider only the evidence that is favorable to the judgment along with the reasonable inferences to be drawn therefrom to determine whether there was sufficient evidence of probative value to support a conviction. *Id.*

IC 35–44–3–5(a) provides that a person who intentionally flees from lawful detention commits escape, a Class C felony. Our supreme court has previously held that a person is "lawfully detained" within the meaning of the escape statute when a police officer places him or her in handcuffs pursuant to a writ of body attachment. *Leshore v. State*, 755 N.E.2d 164, 165 (Ind.2001). Here, however, Eckert failed at any time to handcuff or physically restrain Mesarosh. Thus, we must look to other indicia to determine whether Mesarosh was "lawfully detained" at the time he fled.

IC 35–41–1–18(a) details the situations that constitute "lawful detention," including arrest, custody following surrender in lieu of arrest, and any detention for law enforcement purposes, among others.[2] IC 35–33–1–5, in turn, defines "arrest" as "the taking of a person into custody, that he may be held to answer for a crime." Courts have explained that an arrest has occurred when a police officer interrupts the freedom of the accused and restricts his or her liberty of movement. *Peterson v. State*, 250 Ind. 269, 272, 234 N.E.2d 488, 490 (1968); *Gibson v. State*, 733 N.E.2d 945, 953 (Ind.Ct.App.2000).

By contrast, custody is not statutorily defined. However, a common law definition of "custody" has developed in the context of when *Miranda*[3] warnings are

required. Echoing the common law definition of arrest, courts have held that a person is in "custody" if the individual's freedom has been deprived in a significant way or if a reasonable person in the circumstances would believe that he or she is not free to leave. *Gibson*, 733 N.E.2d at 953.

Here, Eckert testified that he was on routine patrol when he saw a parked truck that he knew was Mesarosh's. He was aware that there had been a warrant issued for Mesarosh's arrest, so he "kept an eye out" for Mesarosh. *Transcript* at 116. He observed Mesarosh heading toward his truck, and he notified the dispatcher that he would be placing Mesarosh in custody. In the meantime, Mesarosh had entered his truck and begun to drive away. Eckert pulled his car behind Mesarosh's truck, turned on his car's lights, and initiated a traffic stop. Both men got out of their cars and approached each other. Eckert informed Mesarosh that there was a warrant issued for his arrest, and that Eckert "was going to take him into custody at that time, and take him to the jail." *Transcript* at 121. Mesarosh pleaded with Eckert to let him go and promised that he would turn himself in the following morning, but Eckert advised him that this was not possible. Mesarosh continued to argue with Eckert. Eckert testified that Mesarosh eventually agreed to be arrested, but asked if he could first take his truck back to his home first. Eckert agreed and told Mesarosh that he would follow him to drop off the truck. Mesarosh then indicated that he also needed to drop off his passenger. Eckert advised him that he was under arrest, but agreed to let Mesarosh drop off his passenger and return his truck to his home.

---

2. The other circumstances listed in the statute are clearly inapplicable here.

3. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Eckert followed Mesarosh by one car length into town while Mesarosh dropped off his passenger and then drove to the parking lot of an apartment complex. Mesarosh pulled his vehicle into a parking space, and Eckert pulled his police vehicle behind the space to block Mesarosh. Mesarosh exited and locked his truck. Eckert retrieved a copy of the arrest warrant and began to open the door of his vehicle when he observed Mesarosh begin running in the opposite direction. Eckert did not give chase, but stayed on the scene for ten to fifteen minutes. Mesarosh was eventually arrested several months later.

Based on these facts, we conclude that when Eckert initiated the traffic stop and informed Mesarosh that he would be taking him to jail pursuant to the body attachment, Mesarosh's freedom of movement was restricted such that he was lawfully detained. However, that detention ended when Eckert allowed Mesarosh to leave the scene of the detention driving his truck. It stretches the definition of "arrest" to include situations, like this, where the defendant's freedom of movement is for all practical purposes unrestrained. Accordingly, we conclude that Mesarosh was not under arrest at the time he fled.

■ Detention also includes those situations in which the defendant surrenders in lieu of arrest. Clearly, Mesarosh did not surrender. When initially detained by Eckert, Mesarosh argued and negotiated for his continued freedom and only "agreed" to be arrested after being allowed certain privileges. Accordingly, this definition of detention also does not apply here. The State cites this court's holding in *Anglin*, 787 N.E.2d at 1017, in which we interpreted the "any other detention for law enforcement purposes" provision of the statute. However, there, our analysis focused on who was performing the detention. In that case, the defendant challenged his conviction for escape where he fled after having been sentenced by the court at a hearing and informed that his sentence would begin immediately. He argued that because he had not yet been taken into custody by law enforcement officers, he could not have committed escape. We explained that IC 35–41–1–18 does not explicitly limit its application to situations in which a law enforcement officer has control of an individual. We concluded that the defendant was in detention for law enforcement purposes in that he was not free to leave the courthouse as soon as he was informed that the sheriff's department personnel would pick him up at the designated location. Accordingly, we found the evidence to be sufficient to support the defendant's conviction for escape. *Id.* *Anglin* is inapposite here because there is no question about who performed the detention. The detention, to the extent that it existed, was undoubtedly performed by a law enforcement officer. Accordingly, we find that this provision of the statutory definition of lawful detention does not apply to this situation.

■ In this case, we conclude that Mesarosh was not lawfully detained at the time he fled. Accordingly, we find the evidence insufficient to support his conviction for escape as a Class C felony. This, however, does not end our analysis under these circumstances. In some cases, we have reversed a defendant's conviction on an offense, but entered conviction on a lesser offense that was clearly supported by the evidence. *See, e.g., Ritchie v. State,* 243 Ind. 614, 624, 189 N.E.2d 575, 578–79 (1963) (reversing conviction of rape based on insufficiency of evidence of element of penetration and entering conviction on the lesser offense of sexual battery); *Anderson v. State,* 674 N.E.2d 184, 189–90 (Ind.Ct.App.1996) (reversing and vacating judgment and sentence as to offense of

aggravated battery and remanding with instructions to enter judgment and sentence on offense of battery with a deadly weapon).

Subsection (c) of IC 35–44–3–5 provides that a person who knowingly or intentionally fails to return to lawful detention following temporary leave granted for a specified purpose or limited period commits failure to return to lawful detention, a Class D felony. Here, Eckert informed Mesarosh that he was under arrest, but then granted him leave for the specific purpose of transporting his passenger and parking his truck. After receiving this grant of leniency, Mesarosh fled on foot instead of returning to Eckert's custody, as Eckert ordered him to stop. The evidence clearly demonstrates that Mesarosh committed failure to return to lawful detention, a Class D felony.

Thus, we reverse Mesarosh's conviction for escape as a Class C felony and remand this case to the trial court with instructions to enter a judgment of conviction against Mesarosh for failure to return to lawful detention and impose sentence accordingly.

Reversed and remanded with instructions.

BAILEY, J., and VAIDIK, J., concur.