ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana



FILED

Jan 11 2018, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Amber Keith,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | January 11, 2018<br><br>Court of Appeals Case No.<br>32A01-1709-CR-2011<br><br>Appeal from the Hendricks<br>Superior Court<br><br>The Honorable Stephenie Lemay-Luken, Judge<br><br>Trial Court Cause No.<br>32D05-1703-F6-293 |

**May, Judge.**

[1]     Amber Keith challenges the sufficiency of evidence supporting her conviction of Level 6 felony escape.[1] She argues the State charged her with a crime of which she could not be convicted because her home does not qualify as a place of "lawful detention" from which to escape as required for conviction of escape under Indiana Code section 35-44.1-3-4(c). We hold that, for persons on home detention, a home is a place of lawful detention and, accordingly, affirm Keith's conviction of escape.

## Facts and Procedural History

[2]     On March 1, 2017, pursuant to her conviction for a crime about which the record gives us no additional information, Keith was ordered to serve 180 days on home detention. The home detention order stipulated Keith was to remain in her home except to attend probation appointments and to have her monitoring device maintained.

[3]     Keith was fitted with the monitoring device on March 6, 2017. Probation/Home Detention Officer Chad Koebcke instructed Keith in the use of the monitoring anklet that includes a GPS tracking device[2] and the other conditions of home detention. When Keith left the home detention office at

---

[1] Ind. Code § 35-44.1-3-4(c) (2014).

[2] Officer Koebcke testified the monitoring unit was able to track a person with the use of GPS, to receive messages from the officers and relay those messages to the monitored person, to notify officers of unauthorized movements, and to notify officers of tampering.

approximately 10:00 a.m., Officer Koebcke told her "to go directly home." (Tr. at 11.) She did not.

[4] The GPS tracking device tracked Keith going to numerous other locations prior to going home. Around noon, Keith went home but then left again. Keith returned to her home around 2:00 p.m. During her travels, Officer Koebcke sent messages to her monitoring unit advising Keith to "call [her home detention] officer immediately[.]" (*Id.* at 13.) She did not do so. "[A]t approximately five o'clock (5:00) . . . the anklet lost power and died." (*Id.* at 15.) Keith plugged it in "at approximately eleven (11) eleven [sic] fifteen (15) that evening." (*Id.*) During that power loss, the home detention office "could not say for certain" where she had been. (*Id.*)

[5] The State charged Keith under Indiana Code section 35-44.1-3-4(c) (2014), which states "[a] person who knowingly or intentionally fails to return to lawful detention following temporary leave granted for a specified purpose or limited period commits failure to return to lawful detention, a Level 6 felony." The trial court found Keith had been "granted temporary leave . . . to leave from the . . . home detention office to her home and she failed to do so[;] therefore she [] committed the offense of failure to return to lawful detention[.]" (*Id.* at 21.) The trial court ordered Keith to serve 180 days incarcerated, with credit for time served.

# Discussion and Decision

[6] Keith asserts the State did not present sufficient evidence to prove she committed escape because her home cannot be considered "lawful detention" to which she failed to return, as required under the statutory definition of escape. *See* Ind. Code § 35-44.1-3-4(c). She argues the ankle monitor, not her home, was the lawful detention and she was not ever granted a temporary leave from which she failed to return because she never left the ankle monitor behind.[3]

[7] As Keith agrees she did not go home as ordered, but rather argues her home is not the place of lawful detention from which the State was required to prove she escaped, we must interpret the lawful detention statute. When faced with a question of statutory interpretation, our review is *de novo. In re M.W.,* 913 N.E.2d 784, 786 (Ind. Ct. App. 2009). We first decide if the statute is ambiguous. *Id.* If it is not, we need not and do not interpret it, but instead apply its plain and clear meaning. *Id.* If the statute is susceptible to more than one reasonable interpretation, it is ambiguous, and we must determine the legislature's intent so that we can give effect to that intent. *Maroney v. State,* 849 N.E.2d 745, 748 (Ind. Ct. App. 2006). Statutes must be read in harmony with related statutes. *St. Margaret Mercy Healthcare Ctrs., Inc. v. Poland,* 828 N.E.2d

---

[3] Keith also argues she should have been charged under various other statutes that punish a violation of a home detention order rather than escape. However, as the State correctly argues, the legislature gives prosecutors the flexibility to charge a person as they see fit. *See Boss v. State*, 702 N.E.2d 782, 784 (Ind. Ct. Appl. 1998) ("prosecutor has broad discretion in determining what crimes to prosecute and what penalties to seek"); *see also Gordon v. State*, 981 N.E.2d 1215, 1220 (Ind. Ct. App. 2013) (neither the escape statute and the unauthorized absence from home detention statute are ambiguous; thus, the rule of lenity does not apply and the State is free to determine which to charge).

396, 402 (Ind. Ct. App. 2005), *trans. denied.* We assume the legislature intended statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals. *B.K.C. v. State,* 781 N.E.2d 1157, 1167 (Ind. Ct. App. 2003).

[8]     Lawful detention is defined by statute as:

> (1) arrest;
>
> (2) custody following surrender in lieu of arrest;
>
> (3) detention in a penal facility;
>
> (4) detention in a facility for custody of persons alleged or found to be delinquent children;
>
> (5) detention under a law authorizing civil commitment in lieu of criminal proceedings or authorizing such detention while criminal proceedings are held in abeyance;
>
> (6) detention for extradition or deportation;
>
> (7) placement in a community corrections program's residential facility;
>
> (8) electronic monitoring;
>
> (9) custody for purposes incident to any of the above including transportation, medical diagnosis or treatment, court appearances, work, or recreation; or

(10) any other detention for law enforcement purposes.

(b) Except as provided in subsection (a)(7) and (a)(8), the term does not include supervision of a person on probation or parole or constraint incidental to release with or without bail.

(c) The term does not include electronic monitoring through the use of an unmanned aerial vehicle under IC 35-33-5-9.

Ind. Code § 35-31.5-2-186 (2014).

[9] In *Anglin v. State,* 787 N.E.2d 1012 (Ind. Ct. App. 2003), *trans. denied*, we held Anglin had escaped from lawful detention even when he was merely told by the trial court to wait in the hallway to be transported to the sheriff's department.[4] We held that although Anglin was not in physical custody of a law enforcement officer at the time he left the courthouse, the trial court's order was sufficient to place him in lawful detention for purposes of the statutory definition. *Id.* at 1017.

[10] Herein, Keith was placed on home detention, and the order placing her there required Keith to remain in her home except to attend probation appointments and have her monitoring device maintained. Then, after getting her monitoring device, Keith was told to "to go directly home." (Tr. at 11.) Keith was ordered to be detained in her home similar to any prisoner in a formal jail or prison,

[4] In *Anglin*, we interpreted the Indiana Code section 35-41-1-18(a)'s definition of "lawful detention." In 2012, this statute was replaced by Indiana Code section 35-31.5-2-186, with the same language in section (a) of both versions.

with the resulting monitoring of her actions and lack of autonomy to conduct her affairs outside the home. *See Hickman v. State*, 81 N.E.3d 1083, 1086 (Ind. Ct. App. 2017) (factors determining confinement include whether the placement in home detention was voluntary, the "degree of freedom of movement," the "degree of direct supervision" by a state actor, and the "degree of autonomy and privacy enjoyed by the person in the conduct of his everyday life").

[11] Contrary to her arguments, the monitoring device was not the detention from which Keith had to flee to be guilty of escape; rather, her escape was effectuated by being absent from her home. For the purposes of home detention, her home was the place of lawful detention and she escaped from it first by not going there immediately from the home detention office and second by leaving again later in the day. *See, e.g., Grabarczyk v. State*, 772 N.E.2d 428, 432 (Ind. Ct. App. 2002) (a home detention order requires the person to stay at home). The trial court found Keith had been "granted temporary leave . . . to leave from the . . . home detention office to her home and she failed to do so[;] therefore she [] committed the offense of failure to return to lawful detention[.]" (Tr. at 21.) As the State provided sufficient evidence of her escape from her home, we affirm her conviction.

[12] Affirmed.

Vaidik, C.J., and Altice, J., concur.