## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2020, 8:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz &
Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Thomas J. Flynn
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shawn Marshall, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | January 30, 2020 <br><br> Court of Appeals Case No. 19A-CR-1746 <br><br> Appeal from the Decatur Superior Court <br><br> The Honorable Matthew D. Bailey, Judge <br><br> Trial Court Cause No. 16D01-1903-F6-403 |

**Baker, Judge.**

[1] Shawn Marshall appeals his convictions and sentence for Level 6 Felony Resisting Law Enforcement[1] and Level 5 Felony Escape,[2] arguing that the evidence is insufficient to support the convictions and that the sentence is inappropriate in light of the nature of the offenses and Marshall's character. We find the evidence to be sufficient and that the sentence is not inappropriate, but that double jeopardy principles prohibit allowing both convictions to stand. As such, we affirm the conviction and sentence for Level 5 Felony Escape, and remand with instructions to vacate the conviction of Level 6 Felony Resisting Law Enforcement.

## Facts

[2] On March 28, 2019, Decatur County Sheriff's Deputy Patrick Graue detected a vehicle traveling seventy-seven miles per hour in a fifty-five-miles-per-hour zone on State Road 3/46 at County Road 450 West. Deputy Graue turned on his emergency lights and initiated a routine traffic stop. Upon approaching the stopped vehicle, Deputy Graue encountered Marshall as the driver. When he requested Marshall's license and registration, Deputy Graue smelled burnt marijuana, but he refrained from immediately questioning Marshall and instead went back to his own vehicle to check the license and registration through dispatch.

---

[1] Ind. Code § 35-44.1-3-1(a)(3), -(c)(1)(A).

[2] I.C. § 35-44.1-3-4(a).

[3]     While checking Marshall's license and registration, Deputy Graue learned of Marshall's extensive criminal history and requested that a second deputy be sent to the scene. Deputy Kevin Rohr arrived soon thereafter, and the two deputies then approached Marshall's vehicle together. At that point, Deputy Graue informed Marshall that he smelled burnt marijuana coming from the vehicle and asked if there was anything illegal inside the vehicle. In response, Marshall "be[came] irate" and accused Deputy Graue of "harassing him" and "trying to frame him." Tr. Vol. II p. 55. The two deputies calmly ordered Marshall to exit his vehicle and explained that they were going to perform a probable cause search of the vehicle. But Marshall refused to exit the vehicle, and he repeatedly stated "you're not searching my car" and that he did not give his consent to a search. *Id.* at 56. The deputies continued to calmly try to order Marshall to get out of the car, explaining again that the odor of burnt marijuana emanating from the interior of the car gave them probable cause to search, but that if no illegal substance was found, Marshall would be free to go.

[4]     Despite these orders, "[Marshall's] hostility continued to escalate." *Id.* at 57. Deputy Graue began to request that another officer be dispatched to the scene. But, as he was doing so, he "observed Mr. Marshall take his stare off Deputy Rohr and . . . began looking straight ahead as his right hand went down to the gearshift, placing his vehicle into forward motion." *Id.* The two deputies shouted for Marshall to stop, but Marshall instead proceeded to accelerate the vehicle and drove at a high speed down the road and away from the traffic stop.

[5] Both deputies returned to their vehicles and initiated emergency pursuit of Marshall, following him for approximately two miles before Marshall suddenly pulled over and parked on the side of the highway. The deputies approached his vehicle with their service weapons drawn and ordered Marshall out of the car. Marshall finally complied and was promptly placed under arrest.

[6] The same day, the State charged Marshall with one count of Level 6 felony resisting law enforcement. On April 26, 2019, the State moved to amend the charging information by adding one count of Level 5 felony escape, and the trial court granted the motion on April 29, 2019. A jury trial was held on June 3, 2019, at the conclusion of which the jury found Marshall guilty on both counts. At a sentencing hearing held on June 28, 2019, the trial court sentenced Marshall to two and one-half years for resisting law enforcement and six years for escape, to be served concurrently, for an aggregate sentence of six years fully executed. Marshall now appeals.

# Discussion and Decision

## I. Double Jeopardy

[7] At the outset, we must confront a double jeopardy problem. The State concedes the issue and asks that we vacate the conviction for resisting law enforcement.

[8] Under Article 1, Section 14 of the Indiana Constitution, "[n]o person shall be put in jeopardy twice for the same offense." This has been interpreted by our Supreme Court to mean "that two or more offenses are the 'same offense' in violation of Article 1, Section 14 of the Indiana Constitution if, with respect to

*either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999) (emphases in original).

[9] Marshall argues, and the State readily agrees, that the convictions for both resisting law enforcement and escape are based upon the same actual evidence. We agree. As such, both convictions cannot stand without violating double jeopardy principles. We therefore remand with instructions to vacate the Level 6 felony resisting law enforcement conviction.

## II. Sufficiency of the Evidence

[10] Next, Marshall argues that the evidence is insufficient to support either the resisting law enforcement conviction or the escape conviction.[3] In reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and the reasonable inferences supporting the conviction, and we will neither assess witness credibility nor reweigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt. *Id.*

---

[3] Because we have ordered the resisting law enforcement conviction to be vacated, we need not and will not address the evidence supporting that conviction.

[11]     To convict Marshall of escape, the State had to prove beyond a reasonable doubt that Marshall 1) intentionally 2) fled 3) from lawful detention. I.C. § 35-44.1-3-4(a). Marshall's conduct was unquestionably intentional. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). We agree with the State that "[p]utting one's vehicle in drive and pressing down on the gas pedal is a volitional act. A vehicle doesn't just drive away by itself. It requires intent by the driver to operate in such a fashion." Appellee's Br. p. 16.

[12]     With regards to the fleeing and lawful detention elements, Marshall argues that the evidence does not support a conclusion that he was detained before he drove away. Specifically, he contends that, because he was never placed in handcuffs, put in jail, or otherwise physically restrained, he was not lawfully detained for purposes of the escape offense. He also emphasizes that he was not explicitly told he was being detained, advised of his rights, or asked for his consent before he drove away from the traffic stop.

[13]     In the traffic stop context, Indiana Code section 34-28-5-3 authorizes detention by a law enforcement officer of a person who the officer in good faith believes has committed an infraction or ordinance violation. Indiana Code section 35-31.5-2-186 enumerates a list of circumstances that qualify as "lawful detention," which includes the types of detention cited by Marshall—arrest, being placed in jail, and so forth—as well as "any other detention for law enforcement purposes." Our Court has interpreted this catch-all provision to mean that a person can be lawfully detained even if they are not subject to the types of

restraint Marshall points out were lacking in his case. Rather, "what is critical in determining the meaning of 'any other detention for law enforcement purposes' is that an individual is being detained so that he is subject to legitimate law enforcement purposes." *Anglin v. State*, 787 N.E.2d 1012, 1017 (Ind. Ct. App. 2003).

[14] In *Anglin*, the Court found that the defendant had been subject to lawful detention for purposes of the escape statute where he exited the courthouse after being ordered by the trial court to wait in the hallway for transportation to jail to serve the sentence he had just been ordered to serve. "Anglin was 'detained' by the trial court in that he was not free to leave the building as soon as he was informed that the Sheriff's Department would pick him up at the designated location in the courthouse. That Anglin was not in the physical custody of the transport officer at the time that he fled does not exclude the conclusion that he was in 'detention for law enforcement purposes.'" *Id.*

[15] Here, the same logic can be applied to Marshall: though not under the physical control of the deputies, he was nonetheless being detained for the law enforcement purposes of conducting a traffic stop and a probable cause search of his vehicle, and the officers repeatedly informed him of such and ordered him out of his vehicle. There was no indication at the time Marshall drove away that he was free to go; the officers even told him as much when they explained that he would only be free to go following the vehicle search if no illegal substances were found. As such, we find that Marshall was subject to

lawful detention at the time he fled the scene, and that all elements of the escape offense are therefore supported by sufficient evidence.

# III. Sentence

Marshall next argues that his sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a statutorily authorized sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In conducting this review, "substantial deference" must be given to the trial court's decision, "since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted). The defendant bears the burden of proving that the sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

For Level 5 felony escape, Marshall faced a term of one to six years, with an advisory sentence of three years. Ind. Code § 35-50-2-6(b). The trial court imposed a maximum six-year term.[4]

---

[4] Because both sentences were ordered to be served concurrently, our instructions to vacate the resisting law enforcement conviction—which carried the lesser of the two sentences—will impact neither the length of the sentence nor our analysis regarding its inappropriateness.

[18]     With respect to the nature of the offense, Marshall sped away from the officers in a manner that forced Deputy Rohr to quickly back up into oncoming traffic to avoid being harmed by Marshall's moving vehicle. Though Deputy Rohr was not injured, Marshall's actions nonetheless endangered the life of another human. The offense also demonstrated a high lack of respect for law enforcement, as Marshall blatantly ignored orders and became increasingly hostile and angry with officers despite their attempts to remain calm and keep the situation under control.

[19]     With respect to his character, we first note Marshall's extensive criminal history. Marshall has been charged with over eleven felonies since 1990, and since 2004 has been convicted and sentenced for two additional felonies, robbery and battery resulting in bodily injury. Even now, all of the following felony charges are currently pending against Marshall for offenses that occurred on or after July 18, 2018: unlawful possession of a syringe, synthetic identity deception, possession of methamphetamine, maintaining a common nuisance via controlled substances, and intimidation by way of threatening to commit a forcible felony.

[20]     Additionally, Marshall was out on bail for two of those felony charges when he committed the offense in this case. He was also on probation in Georgia at the time he committed the present offense and violated his probation by fleeing the state to come to Indiana and by committing additional offenses while on probation.

Furthermore, Marshall's behavior while in jail has been far from commendable. From March to June 2019, when Marshall was incarcerated in the Decatur County Detention Center, Marshall had fifteen separate disciplinary incidents and misconduct write ups, and he has been described as "a very aggressive inmate, aggressive towards other inmates and then towards other staff. He constantly violates security protocols and security violations." Tr. Vol. II. p. 129. Among other things, he has been written up for threatening to throw feces and bodily fluids on staff members, covering cameras and lights, flooding his cell, and getting into physical altercations, some of which involved makeshift weapons. *See id.* at 130-33. Marshall is also known to be a current member of a gang and has been evaluated as having a high likelihood to reoffend.

Marshall argues that the chronological remoteness of much of his criminal history—with multiple charges and offenses occurring over ten years ago—and the difference in nature of those offenses from the present offense render the imposition of a maximum sentence inappropriate. While the chronological remoteness of prior criminal history should be taken into account, "we will not say that remoteness in time, to whatever degree, renders a prior conviction irrelevant," and it is still within the trial court's discretion to consider it an aggravating circumstance. *Buchanan v. State*, 767 N.E.2d 967, 972 (Ind. 2002). And here, Marshall's criminal history is not limited to those charges and convictions that are chronologically distant, but rather represents a longstanding pattern, continuing into the present, of an irreverence towards the

law, aggressiveness towards others, and a complete lack of remorse and willingness to change his behavior.

[23] We do not find the six-year maximum sentence imposed by the trial court to be inappropriate in light of the nature of the offense and Marshall's character.

[24] The judgment of the trial court is affirmed and remanded with instructions to vacate the conviction for Level 6 felony resisting law enforcement.

Riley, J., and Brown, J., concur.