## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 30 2020, 8:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT JUSTIN P. NORTON

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEY FOR APPELLANT RANDALL E. MYERS

Kay A. Beehler
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Justin P. Norton and Randall E. Myers,

*Appellants-Defendants,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 30, 2020

Court of Appeals Case No. 19A-CR-2389

Interlocutory Appeal from the Vermillion Circuit Court

The Honorable Robert M. Hall, Senior Judge

The Honorable Jill D. Wesch, Judge

Trial Court Cause Nos.
83C01-1905-F6-81
83C01-1904-F6-60

**Crone, Judge.**

# Case Summary

[1] Justin P. Norton and Randall E. Myers (collectively Appellants) were charged in separate causes with level 6 felony failure to return to lawful detention. They filed separate motions to dismiss, each one claiming that he was not in "lawful detention," as defined by statute. The trial court denied both motions. In this consolidated interlocutory appeal, Appellants contend that the trial court erred in denying their motions to dismiss. We affirm.

# Facts and Procedural History

[2] The facts with respect to Norton are as follows. In April 2019, Norton was being held in the Vermillion County Jail on charges of level 6 felony possession of a syringe and class C misdemeanor possession of paraphernalia. At that time, he was the subject of a hold in Vigo County in connection with a different cause. Norton filed a motion for release on recognizance. On April 11, 2019, the trial court issued an order granting the motion and ordering Norton's release from the Vermillion County Jail and his transfer to Vigo County for the hold. The order stated that on his release from the Vigo County Jail, Norton must enter a substance abuse rehabilitation facility, comply with all terms and conditions of the facility, and complete the program. The order also specified, "If at any time Defendant is discharged from the program before completion, leaves voluntarily or submits a positive drug screen while in the rehabilitation program, she [sic] shall report back to the Vermillion County Jail." Appellants'

App. Vol. 2 at 10. Norton reported to Vigo County for the hold and was released the next day. He did not enter a rehabilitation facility and did not report back to the Vermillion County Jail.

[3] The State charged Norton with level 6 felony failure to return to lawful detention. Norton filed a motion to dismiss, which the trial court denied. He sought and was granted certification of the trial court's order for interlocutory appeal.

[4] The facts with respect to Myers are as follows. In December 2018, the State charged Myers with level 6 felony battery on a public safety official, class B misdemeanor disorderly conduct, class B misdemeanor public intoxication, and a habitual offender count. On March 5, 2019, he pled guilty to the level 6 felony battery charge. The trial court found a factual basis and took the guilty plea under advisement. Pending sentencing, the trial court released Myers from the Vermillion County Jail and ordered him to enroll in and complete inpatient substance abuse treatment at the Truman House. The release order specified that Myers's next court date would be June 12, 2019, at 9:30 a.m. State's Ex. 1. The order also stated, "if you leave the Truman House for any reason you are to immediately return to the jail." *Id*. On April 9, 2019, Myers was expelled from Truman House due to rules violations but did not return to the jail as ordered.

[5] The State charged Myers with level 6 felony failure to return to lawful detention. Myers filed a motion to dismiss, which the trial court denied. He

sought and was granted certification of the trial court's order for interlocutory appeal. He also moved to consolidate his cause with Norton's for purposes of the appeal, which the trial court granted. We accepted jurisdiction of Appellants' consolidated interlocutory appeal.[1] Additional facts will be provided as necessary.

## Discussion and Decision

[6] Appellants contend that the trial court erred in denying their motions to dismiss. We typically review the trial court's ruling on a motion to dismiss for an abuse of discretion. *State v. Thakar*, 82 N.E.3d 257, 259 (Ind. 2017). However, Appellants' arguments involve statutory interpretation and therefore are matters of law, which we review de novo. *Montgomery v. State*, 14 N.E.3d 76, 78 (Ind. Ct. App. 2014). Our objective is to give effect to the intent of the legislature. *Rowe v. State*, 813 N.E.2d 1232, 1234 (Ind. Ct. App. 2004), *trans. denied*. "We must give words their common and ordinary meaning, while examining the statute as a whole." *Id.* "We presume the legislature intended the language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Id.* (quoting *Anglin v. State*, 787 N.E.2d 1012, 1016 (Ind. Ct. App. 2003), *trans. denied* (2004)).

---

[1] The State has filed a motion to strike Myers's reply brief, which we deny in an order issued contemporaneously with this decision.

Appellants filed separate motions to dismiss the charge of level 6 felony failure to return to lawful detention. Indiana Code Section 35-44.1-3-4(c) defines this offense as follows:

> A person who knowingly or intentionally fails to return to lawful detention following temporary leave granted for a specified purpose or limited period commits failure to return to lawful detention, a Level 6 felony. However, the offense is a Level 5 felony if, while committing it, the person draws or uses a deadly weapon or inflicts bodily injury on another person.

[7] Appellants contend that they did not violate the failure-to-return statute because they were not in lawful detention as defined by Indiana Code Section 35-31.5-2-186:

> (a) "Lawful detention" means:
>
> (1) arrest;
>
> (2) custody following surrender in lieu of arrest;
>
> (3) detention in a penal facility;
>
> (4) detention in a facility for custody of persons alleged or found to be delinquent children;
>
> (5) detention under a law authorizing civil commitment in lieu of criminal proceedings or authorizing such detention while criminal proceedings are held in abeyance;
>
> (6) detention for extradition or deportation;
>
> (7) placement in a community corrections program's residential facility;

(8) electronic monitoring;

(9) custody for purposes incident to any of the above including transportation, medical diagnosis or treatment, court appearances, work, or recreation; or

(10) any other detention for law enforcement purposes.

(b) Except as provided in subsection (a)(7) and (a)(8), the term does not include supervision of a person on probation or parole or constraint incidental to release with or without bail.

[8] There are relatively few cases interpreting these statutes. The most similar is *Rowe*, 813 N.E.2d at 1233, in which another panel of this Court interpreted the predecessor statute, which contained a list of "lawful detention" definitions identical to the list found in subsection (a) of the current statute. Rowe was sentenced to 180 days following his class D felony conviction for being a habitual traffic violator. *Id*. He sought a stay of execution of his sentence so that he could perform his summer construction job in other cities. *Id*. The trial court agreed to suspend execution and remanded him to the custody of the county sheriff for execution of his sentence to begin "October 1, 2001 at 9:00 a.m." *Id*. On September 30, 2001, Rowe phoned the county jail and asked for an extension, which was denied. *Id*. Notwithstanding, he went to work and did not report to jail on October 1 as ordered. *Id*. He was convicted of failure to return to lawful detention and challenged the sufficiency of the evidence to support his conviction, claiming that "he was never lawfully detained after he was sentenced and therefore there was no lawful detention to which he failed to return." *Id*. at 1234. We affirmed Rowe's conviction, reasoning that when he

was present before the trial court for sentencing, he was in "detention for law enforcement purposes" under subsection (a)(10) and failed to return to lawful detention in the county jail. *Id.* at 1235.[2] Thus, the Rowe court articulated that to be convicted of failure to *return* to lawful detention, one must have been in lawful detention in the first place.

[9] Here, unlike the defendant in *Rowe*, Norton and Myers were in the county jail at the time they were granted temporary release. Like Rowe, they were temporarily released for limited purposes and were subject to orders to return to jail in certain specified circumstances (here, noncompliance with court-ordered rehabilitation). They claim that their circumstances did not fit within the statutory definition of lawful detention. Indiana Code Section 35-31.5-2-186(a)(3) defines lawful detention in pertinent part as "detention in a penal facility." A county jail is a penal facility. Ind. Code § 35-31.5-2-232. Nevertheless, Appellants claim that their circumstances amounted to a constraint incidental to release with or without bail, thus placing them within

---

[2] In interpreting the "lawful detention" statute, the *Rowe* court examined our earlier decision in *Anglin*, 787 N.E.2d at 1017, where the defendant fled the courthouse after being ordered to sit in the hall after his sentencing hearing to await transport to the jail. He was convicted of escape and challenged the sufficiency of evidence to support his conviction, claiming that he was not being detained for law enforcement purposes at the time he fled the courthouse. *Id.* The *Anglin* court articulated that being in "detention for law enforcement purposes" is not limited to circumstances in which a law enforcement officer has control of an individual. *Id.* The *Rowe* court also cited *Mesarosh v. State*, 801 N.E.2d 200, 204 (Ind. Ct. App. 2004), where a defendant who was placed under arrest asked the officer's permission to drop off his passenger and take his truck home before going to jail and then fled on foot after parking his truck at home. The *Mesarosh* court found the evidence insufficient to support the defendant's escape conviction but sufficient to support his conviction for failure to return to lawful detention, reasoning that Mesarosh had been granted temporary leave for a specific purpose of transporting his passenger and parking his truck at home and failed to return to lawful detention. *Id.* at 204.

the exception found in subsection (b). They therefore claim that the State should have filed a petition to revoke release and failed to do so. The State was not required to file a petition to revoke bail or release. *See* Ind. Code § 35-33-8-5(d) ("The court *may* revoke bail or an order for release on personal recognizance upon clear and convincing proof by the state that … while admitted to bail the defendant … violated any condition of the defendant's current release order") (emphasis added).

## *A. Norton*

Norton first focuses on the timing of his release, arguing that because it was *pretrial* release, it constituted release with or without bail subject to the constraint of entering and completing rehabilitation and therefore fell within subsection (b)'s exception to the definition of lawful detention. On this basis, he asserts that he was not in "lawful detention" and therefore cannot be subject to prosecution for knowingly or intentionally failing to return to it. In making this argument, he conflates the application of the statute defining lawful detention with the statute that lays out the elements of the offense with which he was charged: failure to return to lawful detention. In other words, he fails to account for the clear language of subsection (a)(3) listing a penal facility as lawful detention and the clear language of his release order specifying, "If at any time Defendant is discharged from the program before completion, leaves voluntarily or submits a positive drug screen while in the rehabilitation program, she [sic] *shall report back to the Vermillion County Jail*." Appellants' App. Vol. 2 at 10 (emphasis added). Norton failed to comply with the order in

two ways: first, he failed to attend and complete rehabilitation; and second, he failed to obey the portion of the order that required him to return to the county jail. The only aspect of Norton's release that possibly could have been construed as a constraint on release with or without bail would have been his mandated enrollment in and completion of a rehabilitation program. But the order did not end there; rather, it included an express order to return to the jail if he failed to complete the program. Norton's noncompliance with rehabilitation automatically triggered his duty to return to the county jail, and a petition to revoke was not a necessary condition precedent to filing charges for failure to return to lawful detention.

[11] Norton also focuses his argument on the fact that the written release order did not specify which rehabilitation facility he was required to enter. We note that the transcript of the hearing on the motion to dismiss includes several references indicating that Norton was to attend rehabilitation at Club Soda, but even absent those references, we do not find a lack of specificity in the written order to be determinative. The clear intent of the release order was that Norton was to be in one of three places: the Vigo County Jail serving the hold, a rehabilitation facility, or the Vermillion County Jail. Having opted out of rehabilitation, he was under a clear, express order to return to the Vermillion County Jail. What matters for purposes of the offense charged is not where Norton was required to go while he was out on release but where he was prior to release and where he was ordered to return. Because the county jail is a penal facility, it falls within the definition of lawful detention, and his failure to

return to it following temporary leave for a specified purpose puts him squarely within the scope of Indiana Code Section 35-44.1-3-4(c).

### B. Myers

[12]  Myers's circumstances are procedurally different in that his temporary release from jail for a specified purpose occurred after he pled guilty to battery in Vermillion County and before sentencing. Like Norton, his release was for the specific purpose of completing a drug treatment program. Myers's written release order identified the place for his rehabilitation as the Truman House. His order also stated, "if you leave the Truman House for any reason you are to immediately return to the jail." State's Ex. 1. Myers was expressly ordered to be in one of two places: the Truman House or the Vermillion County Jail. Like Norton, his failure was two-fold. His expulsion from the Truman House for rules violations amounted to a failure to comply with the terms of his temporary release for a specific purpose, which automatically triggered the requirement that he return immediately to the Vermillion County Jail. The county jail being a penal facility, Myers's failure to return to it rendered him subject to prosecution for failure to return to lawful detention. Ind. Code § 35-44.1-3-4(c).

[13]  In sum, both Norton and Myers were being held in a penal facility, the Vermillion County Jail, and were released for the specific purpose of completing rehabilitation. They were not free to roam. Their noncompliance with rehabilitation triggered in each the duty to return to lawful detention in that same penal facility. The State was not required to file petitions to revoke

their release as a condition precedent to filing charges against each of them for failure to return to lawful detention. Based on the foregoing, we find no error in the trial court's denial of Appellants' motions to dismiss. Consequently, we affirm.

[14] Affirmed.

Bailey, J., and Altice, J., concur.